IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

MANFREDITO LAGUER ROMAN

    Debtor

| | |
|---|---|
| MANFREDITO LAGUER ROMAN<br>    Plaintiff/Debtor<br><br>      vs.<br><br>CITIMORTGAGE, INC.<br>    Defendant | CASE NO. 14-03686 (ESL)<br><br>CHAPTER 13<br><br>ADV. PROC. NO. 14-00255 (ESL) |

OPINION AND ORDER

This case is before the court upon Defendant's *Motion for Summary Judgment* (Docket No. 19), Plaintiff's *Motion for Summary Judgment* (Docket No. 28) and Defendant's *Opposition to Plaintiff's Request for Summary Judgment* (Docket No. 30). For the reasons stated below, the Plaintiff's Motion for Summary Judgment is denied, Defendant's Motions for Summary Judgment is granted, and the instant case is dismissed.

Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. §§1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §§157(a) and (b). Venue of this proceeding is proper under 28 U.S.C. §§1408 and 1409.

-1-

Factual and Procedural Background

On May 11, 2012, Manfredito Laguer Roman ("Debtor" or "Plaintiff") filed a voluntary chapter 13 petition, case no. 12-03692 ("First Case"). On August 30, 2012, CitiMortgage Inc. ("Citi") filed proof of claim 01-1, asserting a secured debt of $25,350.59, with arrears in the amount of $8,713.81; and stating, as basis for perfection: "Security Instrument." Citi attached the following documents to the claim: 1) Escrow Account Disclosure Statement; 2) Note payable to order of CMFC, Inc. issued on October 18, 2006, and signed by Debtor; and 3) Title Study.

The Chapter 13 Trustee, José Ramón Carrión Morales, objected proof of claim no. 01-1 filed by Citi on December 26, 2012, stating: *The Trustee objects proof of claim 01-1 pursuant to Fed. R. Bankr. P. 3001(e); since it lacks of evidence of endorsement of Mortgage Note to demo[n]strate that CITIMORTGAGE INC has the right to receive payments under the plan. (Secured Mortgage).* On February 11, 2013, the objection filed by the Trustee was granted as unopposed (First Case, Docket No. 28). On June 28, 2013, the Debtor requested an *Entry of Order to Trustee not to make any disbursement to POC 1* (First Case, Docket No. 32) which was granted as unopposed on July 8, 2013 (First Case, Docket No. 33). On January 17, 2014, the Debtor was granted a discharge, upon the completion of the chapter 13 plan. (First Case, Docket No. 42).

On May 5, 2014, the Debtor filed a second chapter 13 bankruptcy petition (Lead Case No. 14-03686, Docket No. 1). On October 29, 2014, the Debtor filed the instant Adversary Proceeding pursuant to 11 USC § 506(d), to determine the secured status of Citi, alleging that, to the extent that a lien which secures a claim against the Debtor is a disallowed claim, such lien is void. (Adv. Proc. 14-00255, Docket No. 1).

On February 13, 2015, during the preliminary pretrial and scheduling conference, the parties agreed that the issue presented in the adversary proceeding was legal in nature, and therefore, the parties were granted time to file dispositive motions (Adv. Proc., Docket No. 8).

On May 1, 2015, Citi filed a *Statement of Uncontested Facts as to which there is no genuine Issue to be Tried* (Adv. Proc., Docket No. 17); *Motion Submitting Documents: Exhibits* (Adv. Proc., Docket No. 18) and *Motion for Summary Judgment* (Adv. Proc., Docket No. 19). Citi emphasizes that it is the holder in due course of a mortgage note payable to CMFC Inc. or order, in the principal sum of $30,000.00 (Adv. Proc., Docket No. 17, p. 2, ¶ 1). Citi claims that the Note is secured by a mortgage deed executed on October 18, 2006 before the notary public Fernando Luis Melendez, Esq., deed number 440 ("Mortgage Deed") and that the Mortgage deed is recorded at volume number 294 of Morovis, fourth entry, in the Puerto Rico Property Registry, Manatí Section, property number 8,327 (Adv. Proc., Docket No. 17, p. 2 ¶ 2 and p. 4. ¶ 5).

Citi asserts that on December 30, 2009, a collection of money and mortgage foreclosure action was filed at the State Court of Puerto Rico, Ciales Part, State Court Case No. TD2009-571, since the Debtor defaulted on the Note (Adv. Proc., Docket. No. 17, p. 4, ¶ 6). The Debtor and Citi filed a Stipulation in the state court and pursuant to it, the state court entered a judgment, incorporating the agreements of the parties. (Adv. Proc., Docket No. 17, p. 4 ¶ 8, 11)[1]. Citi asserts that the First Case Court had no jurisdiction to disallow proof of claim 01-1, as it was impeded by the Rooker-Feldman doctrine, and, therefore, such disallowance is void. Citi alternatively alleges that valid liens generally pass through bankruptcy cases unaffected.

Plaintiff also filed a *Motion for Summary Judgment* on May 14, 2015 (Docket No. 28). Plaintiff requests the Court to do a "plain text analysis" of 11 U.S.C. § 506(d), which states that "[t]o the extent that a lien which secures a claim against the debtor that is not an allowed secured creditor, such lien is void". Plaintiff sustains his allegations on National Capital Management, LLC v. Gammage-Lewis, 523 Fed. Appx. 254 (4th Cir. 2013) (per curiam). National Capital affirmed a district court's determination that a security interest became void after the Court allowed the trustee's objection to a claim and granted a discharge in a Chapter 13 bankruptcy case. The Appellate Court affirmed "for the reasons stated by the district court". The District Court understood that § 506(d) provided for an avoidance where the Trustee objected creditor's

---

[1] The Court notes that Citi did not reference the State Court judgment anytime during the First Case.

secured claim for failure to attach proper documentation indicating that it had a perfected security interest in Debtor's vehicle and where the Creditor failed to respond. Nat'l Capital Mgmt., LLC v. Lashauna Change Gammage-Lewis, 2012 U.S. Dist. LEXIS 114395 (E.D.N.C., Aug. 14, 2012). The Court stated that the objection was a suitable substitute for an adversary proceeding where the claim objection, in line with Rule 7001(2), "gives clear notice that the debtor is challenging the validity, priority, or extent of the lien and seeks to abrogate a creditor's right to look to its collateral, and the debtor complies with procedural safeguards set forth in Part VII of the Federal Rules of Bankruptcy Procedure." Nat'l Capital Mgmt., at *8 *citing* In re Kleibrink, No. 3:07-CV-0088-K, 2007 U.S. Dist. LEXIS 63974, 2007 WL 2438359, at *6 (N.D. Tex. Aug. 28, 2007)). Therefore, the Court concluded that, pursuant to 11 U.S.C. § 506(d), the lien was void.

On May 19, 2015, Citi filed a *Motion submitting documents: Certified Translations,* and on May 29, 2015, Citi opposed Plaintiff's request for Summary Judgment, incorporating the allegations of their motion for summary judgment and re-alleging that, even if the First Case Court's determination of disallowance was valid, Citi still held an *in rem* claim against the Debtor's residence (Dockets No. 29 and 30).

On June 10, 2015, The Court requested the parties to supplement their legal memoranda to discuss the applicability of the Supreme Court's decision on Bank of America v. Caulkett (Docket No. 31). On July 15, 2015, Citi filed *Motion in Compliance with Order dated June 10, 2015* as did Plaintiff on July 30, 2015 (Dockets No. 37 and 40). Through Opinion and Order dated October 9, 2015, the Court concluded that the Caulkett decision applied only to chapter 7 cases and was not dispositive of the pending cross motions for summary judgment filed by Plaintiff and Defendant (Docket No. 41).

During a status conference held on June 3, 2015, Plaintiff and Defendant were granted time to brief the Court in relation to the impact of the 9th Circuit determination at In Re Bleindheim 13-35354 to the case at hand. Citi and Plaintiff complied with the Court's order (Dockets No. 76 and 79).

-4-

Applicable Law and Analysis

*Standard for Summary Judgment*

Fed. R. Civ. P. 56, applicable in bankruptcy proceedings through Fed. R. Bankr. P. 7056, provides that summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See also In re Colarusso, 382 F.3d 51 (1st Cir. 2004), *citing* Celotex Corp. v. Cartrett, 477 U.S. 317, 322-23 (1986). "The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved." Wright, Miller & Kane, Federal Practice and Procedure, Civil 3d, Vol 10A, § 2712 (2013). "Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried." Id. at 202-203. Summary judgment is not a substitute for a trial of disputed facts; the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain. Id. at 205-206.

Summary judgment is warranted where, after adequate time for discovery and upon motion, a party fails to make a showing sufficient to establish the existence of an element essential to its case and upon which it carries the burden of proof at trial. Celotex, 477 U.S. at 322. The moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

For there to be a "genuine" issue, facts which are supported by substantial evidence must be in dispute, thereby requiring deference to the finder of fact. Furthermore, the disputed facts must be "material" or determinative of the outcome of the litigation. Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976). When considering a petition for

summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 473 (1962); Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988).

The moving party invariably bears both the initial as well as the ultimate burden in demonstrating its legal entitlement to summary judgment. Adickes v. Kress & Co., 398 U.S. 144, 157 (1970). See also López v. Corporación Azucarera de Puerto Rico, 938 F.2d 1510, 1516 (1st Cir. 1991). It is essential that the moving party explain its reasons for concluding that the record does not contain any genuine issue of material fact in addition to making a showing of support for those claims for which it bears the burden of trial. Bias v. Advantage International, Inc., 905 F.2d 1558, 1560-61 (D.C. Cir. 1990), cert. denied, 498 U.S. 958 (1990).

The moving party cannot prevail if any essential element of its claim or defense requires trial. López, 938 F.2d at 1516. In addition, the moving party is required to demonstrate that there is an absence of evidence supporting the nonmoving party's case. Celotex, 477 U.S. at 325. Also see Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991); Daury, 842 F.2d at 11. In its opposition, the nonmoving party must show genuine issues of material facts precluding summary judgment; the existence of some factual dispute does not defeat summary judgment. Kennedy v. Josepthal& Co., Inc., 814 F.2d 798, 804 (1st Cir. 1987). Also see Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1172 (1st Cir. 1988); Hahn, 523 F.2d at 464. A party may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions and other supporting documents which, if established at trial, could lead to a finding for the nonmoving party. Over the Road Drivers, Inc. v. Transport Insurance Co., 637 F.2d 816, 818 (1st Cir. 1980).

The moving party has the burden to establish that it is entitled to summary judgment; no defense is required where an insufficient showing is made. López, 938 F.2d at 1517. The nonmoving party need only oppose a summary judgment motion once the moving party has met its burden. Adickes, 398 U.S. at 159.

The court finds that, as proffered by the parties, there are no relevant material facts in controversy.  The sequence of events and the orders entered by the state court and this court, which are relevant to determining whether Citi is a secured creditor, are uncontested.  Thus, the issue is one of law.

*Rooker-Feldman Doctrine*

Pursuant to the Rooker-Feldman doctrine, federal district courts do not have jurisdiction over "federal complaints…[that] essentially invite [] federal courts of first instance to review and reverse state-court judgments." In Re C.H. Props., 2006 Bank. LEXIS 3899; 2006 WL 3909779 (Bankr. D.P.R. Jan. 12, 2006).  The Rooker-Feldman doctrine derives from two (2) Supreme Court decisions: Rooker v. Fidelity Trust, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983). Initially, the Rooker Court held that the federal statutory jurisdiction over direct appeals from state courts pertained, exclusively, to the U.S. Supreme Court and, therefore, was beyond the original jurisdiction of federal district courts. Rooker, 263 U.S. at 415-416. Sixty (60) years later, the Feldman Court held that the jurisdictional bar extended to particular claims that were inextricably intertwined with those that a state-court had already decided. Feldman, 460 U.S. at 486.

After the two (2) Supreme Court's decisions, the lower federal courts extensively expanded the doctrine until year 2005, when the Supreme Court granted certiorari in Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005), in order "to resolve conflict among the Courts of Appeals over the scope of the Rooker-Feldman doctrine." The Supreme Court noted that the doctrine had "…sometimes been construed to extend far beyond the contours of the Rooker and Feldman cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U.S.C. 1738". Exxon Mobil, 544 at 283. The Exxon Mobil Court clarified that the Rooker-Feldman doctrine was "…confined to cases of the kind from which the doctrine acquired its name: cases brought by state court losers

-7-

complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil, 544 at 284. As stated by the Supreme Court, "Rooker-Feldman did not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions". *Id.*

The Supreme Court further clarified in Lance v. Dennis, 546 U.S. 459, 126 S. Ct. 1198, 163 L. Ed. 2d 1059 (2006) (*per curiam*) that the Rooker-Feldman doctrine does not bar actions by nonparties to an earlier state court judgment simply because, for purposes of preclusion law, they could be considered in privity with a party to the judgment. Lance, 546 at 466. "Whatever the impact of privity principles on preclusion rules, Rooker- Feldman is not simply preclusion by another name". *Id.* See also Johnson v. De Grandy 512 U.S. 997, 114 S. Ct. 2647, 129 L. Ed. 2d 775 (1994). The Exxon Mobil Court pared back the Rooker-Feldman doctrine to its core, confining its application to very specific situations. Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 85 (2nd Cir. 2005). The Supreme Court reemphasized the "narrow ground" of the doctrine in Skinner v. Switzer, 562 U.S. 521 (2011) ("If a federal plaintiff 'present[s] [an] independent claim,'" it is not an impediment to the exercise of federal jurisdiction that the "same or a related question" was earlier aired between the parties in state court". *Citing* Exxon Mobil, 544 at 292-293). "Neither Rooker nor Feldman elaborated a rationale for a wide-reaching bar on the jurisdiction of lower federal courts, and our cases since Feldman have tended to emphasize the narrowness of the Rooker-Feldman rule." Lance, 546 at 464.

The United States Court of Appeals for the First Circuit recognized the limits of the doctrine as delineated by Exxon Mobil in Federación de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico, 410 F.3d 17 (1st Cir. 2005) ("These tests of state court judgment finality in our application of the Rooker-Feldman doctrine have now been superseded by the explanation of that doctrine in Exxon Mobil".). See In Re Vazquez, 467 B.R. 550 (Bankr. D.P.R. 2012) (Applying the Court of Appeal's test to determine if state court proceedings had ended, pursuant to Exxon Mobil). See also McKenna v. Curtin, 869 F.3d 44, 47-48 (1st Cir. 2017) ("The

-8-

Rooker Feldman doctrine only applies in the "limited circumstances" where 'the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment.")

The Rooker-Feldman doctrine, therefore, prohibits lower federal courts, including bankruptcy courts, from reviewing final state court judgments. In Re Schwartz, 409 B.R. 240 (B.A.P 1st Cir. 2008). The Bankruptcy Appellate Panel for the First Circuit implemented the four-part test set forth by the Second Circuit at Hoblock v. Albany County Bd. Of Elections, *supra*, in order to determine if Rooker-Feldman applies, that is: (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced, that is, Rooker-Feldman has no application to federal-court suits proceeding in parallel with ongoing state court litigation. The Hoblock Court further instructs that if the requirements outlined in Exxon Mobil are met, then the claim asserted in federal court is "inextricably intertwined" with the claim raised in state court. If, however, the Exxon Mobil requirements are not met, the plaintiff must be said to have raised an independent claim in federal court. Schwartz, 409 at 248. Additionally, the Hoblock Court states that "[a] plaintiff's injuries are not "caused by a state court judgment" when the state court "simply ratified, acquiesced in, or left unpunished" the actions of a third party. Hoblock, 422 at 88.

The discussion of the Rooker-Feldman doctrine presented by Citi, as applicable to the objection to the Proof of Claim No. 1 in the First Case, does not address the Exxon Mobil restricted interpretation of the doctrine, and fails to consider the distinctions made by the Supreme Court, differentiating the Rooker-Feldman doctrine from other preclusion rules. Considering the limitations set in Exxon Mobil, the court first considers that the objection to the Proof of Claim in the First Case was filed by the Trustee, rather than the Debtor. The Trustee was not a part of the state court proceedings and, therefore, the first step of the test, that is, that the state-court plaintiff must have lost in state court, is not satisfied in the First Case's objection to proof of

claim. The Supreme Court has stated that privity is a preclusion principle, not applicable to the Rooker-Feldman doctrine. See Lance v. Dennis, *supra*. Therefore, the Rooker-Feldman doctrine did not deprive the court of jurisdiction to entertain the objection to claim filed by the Trustee in the First Case, as part of the claim allowance process. The court notes that other preclusion doctrines, such as *res judicata*, are not jurisdictional and must be argued affirmatively, and Citi failed to do so in the First Case. Exxon Mobil, 544 at 293. ("Preclusion, of course, is not a jurisdictional matter. See Fed. Rule Civ. Proc. 8(c) (listing *res judicata* as an affirmative defense)").

"[A]ttempts merely to relitigate an issue determined in a state case are properly analyzed under issue or claim preclusion principles rather than Rooker-Feldman. This is because, in addition to the inherently limited scope of Rooker-Feldman, preclusion in federal court based on a state–court judgment is determined by state law, not a federally-specified doctrine. "[I]ncorporation of preclusion principles into Rooker-Feldman risks turning the limited doctrine into a uniform federal rule governing the preclusive effect of state-court judgments, contrary to the Full Faith and Credit Act." In Re Miller v. Deutsche Bank Nat'l Trust Co., 666 F.3d 1255, 1261-1262 (10th Cir. 2012), *citing* Lance, 546 at 466.

In view of the foregoing, the court concludes that the Rooker-Feldman doctrine does not apply to the Chapter 13 trustee's objection to the proof of claim filed by Citi in the First Case as he was not a party to the state court action.

*Procedural and Substantive Disallowance of a Secured Claim*

Fed. R. Bankr. P. 3001(c)(1) requires that, when a claim, or an interest in property of the debtor securing the claim is based on a writing, a copy of the writing shall be filed with the proof of claim. "Although this provision seems mandatory, subsection (f) provides that a proof of claim filed in accordance with Rule 3001 merely constitutes prima facie evidence of the validity and amount of the claim. *Id.* at 3001(f). Thus, courts have held that failing to supply this documentation does not disallow the proof of claim entirely but, instead, simply deprives the claim of prima facie validity." In Re Hilton, 2013, Bank. LEXIS 5058, 2013 WL 6229100 (2013),

referencing In re Harford Sands Inc., 372 F.3d 637, 640-41 (4th Cir. 2004); In re Falwell, 434 B.R. 779, 783 (Bankr. W.D. Va. 2009); In re Goeller, No. 12-17123-RGM, 2013 Bankr. LEXIS 2492, 2013 WL 3064594, at *1–*2 (Bankr. E.D. Va. June 19, 2013). Essentially, Rule 3001 sets forth the various requirements for a procedurally compliant proof of claim.  Ramon Palm Lane, Inc. v. Altman (In re Desert Springs Fin., LLC), 2017 Bankr. LEXIS 1144 (9th Cir. B.A.P. 2017). However, an objection to a proof of claim based on the failure to comply with the requirements of Rule 3001 is procedural in nature, and not a substantive objection. See Shoemake v. SN Servicing Corp., 586 B.R. 741, 744 (M.D. Tenn. 2018) ("Lack of the proof of claim documentation required by Rule 3001(c), which is a procedural rule, is not a substantive ground for disallowing a claim." Referencing In re Porter, 374 B.R. 471, 480 (D. Conn. 2007); Kohout v. Nationstar Mortgage, LLC, 576 B.R. 290, 296 (N.D. N.Y. 2017)).

Rule 3001(c) does not provide an independent basis for objecting to a proof of claim. The grounds for a substantive disallowance of a proof of claim are specifically listed in 11 U.S.C. §502 and not in the Bankruptcy Rules. See In Re Falwell, 434 B.R. 779, 784 (Bankr. W. D. Va. 2009). See also Garner v. Shier (In Re Garner), 246 B.R. 617 (9th Cir. B.A.P. 2000) ("[O]ne who chooses to make a mere formal objection is electing to narrow the issue to whether the proof of claim is executed and filed in accordance with the rules"). "[A] proper objection might be established through "the production of specific and detailed allegations that place the claim into dispute, ... the presentation of legal arguments based upon the contents of the claim and its supporting documents, ... or through pretrial pleadings ... in which evidence is presented which brings the validity of the claim into question."" In re Hight, 393 B.R. 484, 495–96 (Bankr. S.D. Tex. 2008) citing In re Kilgore Meadowbrook Country Club, Inc., 315 B.R. 412, 417–18 (Bankr.E.D.Tex.2004).

A secured creditor is not required to file a proof of claim or participate in the bankruptcy process to protect its lien since the same passes through the bankruptcy process unaffected. See Dewsnup v. Timm, 502 U.S. 410, 417, 112 S. Ct. 773, 116 L. Ed. 2d 903 (1992). The secured mortgage holder files a proof of claim when it wants to participate in the distribution of the plan

-11-

payments. In re Galindez, 514 B.R. 79, 91 (Bankr. D.P.R. 2014); In re Alonso, 525 B.R. 195 (Bankr. D.P.R. 2015). A secured creditor in a chapter 13 may choose to ignore the bankruptcy proceedings and look to its lien for satisfaction of the debt. See Belser v. Nationstar (In Re Belser), 534 B.R. 228, 234 (1st Cir. B.A.P. 2015) See also In re MacKenzie, 314 B.R. 277, 279 (Bankr. D.N.H. 2004). However, Fed. R. Bankr. P. 3021 requires that distributions under the plan shall be made only to those creditors whose pre-petition claims are "allowed" and, therefore, if the secured creditor wants to receive distributions under the chapter 13 plan, it must have an allowed claim. In order to preserve the option of paying a mortgage arrearage through a chapter 13 plan, either the creditor or the debtor needs to timely file a proof of claim. In Re Belser, 534 B.R. at 234. See also In re Petuck, No. 12-12791-BAH, 2013 Bankr. LEXIS 2019, 2013 WL 2154385, at *5 (Bankr. D.N.H. May 17, 2013).

The failure to have an allowed claim does not affect the validity or perfection of the creditor's lien. *Id*. "Fundamentally, a discharge merely releases the debtor from personal liability on the discharge[d] debt; when a creditor holds a mortgage lien or other interest to secure the debt, the creditor's rights in collateral, such as foreclosure rights, survive and pass through bankruptcy". Bibolotti v. Am. Home Mortg. Servicing Inc., 2013 U.S. Dist. LEXIS 69242 at *22, 2013 WL 2147949 at *10 (E.D. Tex. 2013). See Johnson v. Home State Bank, 501 U.S. 78, 83, 111 S. Ct. 2150, 2153, 115 L. Ed. 2d 66, 74 (1991). ("[T]he Code provides that a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy.")

A procedural disallowance is not a substantive adjudication of the validity or extent of a lien. To extinguish or modify a lien during a bankruptcy process, some affirmative step must be taken toward that end. Cen-Pen Corp. v. Hanson, 58 F.3d 89, 92-93 (4th Cir. 1995), referencing Lee Servicing Co. v. Wolf (In re Wolf), 162 Bankr. 98, 107 n.14 (Bankr. D.N.J. 1993); In re Glow, 111 Bankr. 209, 221 (Bankr. N.D. Ind. 1990). "Unless the debtor takes appropriate affirmative action to avoid a security interest in property of the estate, that property will remain subject to the security interest following confirmation." *Id.,* citing In re Honaker, 4 Bankr. 415, 417 (Bankr. E.D. Mich. 1980). "The simple expedient of passing [] [debtor's] residence through the

bankruptcy estate does not vest in the [] [debtor] a greater interest in the residence than [] [the one he] enjoye[d] prior to filing a Chapter 13 petition. *Id*. See also SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin), 530 F.3d 230 (3rd Cir. 2008)**;** In re Kressler, 40 Fed. Appx. 712, 2002 U.S. App. LEXIS 14979.

In the First Case, the Trustee objected the Proof of Claim 01-1 pursuant to the Federal Rules of Bankruptcy Procedure, since the proof of claim lacked "evidence of endorsement of Mortgage Note to demonstrate that CITIMORTGAGE INC has the right to receive payments under the plan" (Docket No. 27, First Case). As per the language of the objection, no substantive challenge to the validity of the lien was contended by the Trustee, pursuant to §502. The court disagrees with the Plaintiff's contention that the Trustee's objection to the Proof of Claim was "on the merits". The objection to the proof of claim was limited to Citi's failure to comply with the Federal Rules of Bankruptcy Procedure, to "receive payments under the plan". No substantive grounds where alleged by the Trustee or the Debtor to avoid Citi's lien. The objection was granted by default, as CMI failed to reply or supplement the Proof of Claim. (Docket No. 28, First Case). Further, the Debtor requested the court "to enter an order allowing the Trustee not to make any disbursement to POC 1 since POC 1 was disallowed" (Docket No. 32, First Case). The Debtor's request was limited to terminate the disbursement made to Citi through the plan and did not address the validity of the lien.

Debtor relies in In Re Gammage-Lewis, #09-04522, from the Eastern District of North Carolina, and its subsequent appellate history, and sustains that the facts of the case at hand are "almost identical". However, the court notes that in In Re Gammage-Lewis the bankruptcy court took into consideration that "the plan proposed by the debtor provided, among other things that the claim of Wells Fargo was to be treated as secured, to the extent of the value of its collateral, with such secured portion of the claim to be paid in full through the chapter 13 disbursements." See Docket No. 28-8, p.1. The Debtor's plan in In Re Gamage-Lewis contained language with a substantial challenge to the extent of the lien over the Debtor's vehicle.

The District Court, on appeal, reemphasized that the Appellee filed a "proposed Chapter 13 plan which provided, *inter alia,* that the claim of Wells Fargo was to be treated as secured, to the extent of the value of its collateral". Nat'l Capital Mgmt., LLC v. Lashauna Change Gammage-Lewis, 2012 U.S. Dist. LEXIS 114395, *2, 2012 WL 3561785 (E.D.NC. Aug. 14, 2012).

Furthermore, the objection language in In Re Gamage- Lewis specifically requested the court to disallow the claim in full as a secured claim and to allow it in full as a general unsecured claim. Both courts concluded that the claim objection, in those circumstances, was a suitable substitute for an adversary proceeding considering that "there was clear notice that the debtor was challenging the validity, priority or extent of the lien"[2].

The facts and legal analysis in In re Gamage-Lewis are different from those in the instant case. In any event, the rationale in In re Gamage-Lewis is subject to debate. This court tends to agree with the position taken by the court in In re Cusato, 485 B.R. 824 (Bankr. E.D. Pa. 2013) and In re Harris, 2016 WL 3412640 (Bankr D.Ma. 2016). The court finds that, contrariwise to Debtor's contention that the objection to claim in the First Case was "on the merits", neither the Trustee or the Debtor challenged Citi's lien, or took any affirmative action that could lead to a lien avoidance. Nothing in the language of Debtor's plan or the objection to proof of claim filed by the Trustee could prompt Citi to consider that the lien was at peril, or that it could lose its foreclosure rights.

Further, the Debtor finds support in HSBC Bank USA, N.A. v. Blendheim (In re Blendheim), 803 F.3d 477 (9th Cir. 2015). However, the court notes that the objection to the claim in In Re Blendheim included both, a procedural and a substantive challenge to the claim, by stating that (1) the Creditor failed to attach a copy of the promissory note and (2) that the promissory note that the Debtors had previously received "appeared to bear a forged signature". In re Blendheim,

---

[2] "At bottom, upon issuance of the Chapter 13 plan, Appellant participated in the claims process to have its purported interest in the Nissan deemed a secured claim. However, because Appellant failed to file a response to Trustee's objection, its claim was disallowed as a secured claim and allowed as a general unsecured claim. Furthermore, the Chapter 13 plan sufficiently apprised Appellant, even before the filing of its proof of claim, that any claims classified as general and unsecure were to receive nothing from such plan." Nat'l Capital Mgmt., LLC v. Lashuana Change Gammage-Lewis, 2012 U.S. Dist. LEXIS 114395, *9 (E.D.NC. Aug. 14, 2012).

-14-

803 at 481. As stated by the Appellate Court, the Bankruptcy Court considered that "there was an objection [] that went to the substance, [and] did not have anything to do with the form of the claim or the lateness of the claim" *Id*. at 482. Additionally, following the disallowance of the creditor's claim in <u>In Re Blendheim</u>, the Debtors filed an Adversary Proceeding to avoid the creditor's lien, and the Court advised the creditor on several occasions to take action to "address the disallowance order". However, the Creditor ignored the Court's orders for eighteen (18) months. Thus, <u>In re Blendheim</u> is not applicable to the controversy before this court.

The court concludes that the facts of the First Case are distinguishable from the facts in <u>In Re Gamage- Lewis</u> and <u>In Re Blendheim</u>, on which the Plaintiff relies. The Debtor's confirmed plan in the First Case dated June 14, 2012 made no challenge to Citi's lien or to the extent of such lien. Although the Debtor moved the court to order the Trustee not to make payments to Citi under the confirmed plan, the plan kept the following provision: "Debtor will maintain regular payments directly to: CitiFinancial/Mortgage". Absent any affirmative action from the Debtor to avoid Citi's lien, and considering that Citi remained as a creditor "provided for"[3] under the plan, Citi retained its foreclosure rights over debtor's property. See <u>In re Soriano</u>, 587 B.R. 371, 382 (Bankr. W.D. Okla. 2018) (Finding that an Order from the court which stated that a disallowed secured claim should not receive further disbursements under the plan did not rendered unenforceable a state court foreclosure judgment in favor of the creditor nor avoided the mortgage lien. The Order merely provided that the creditor would receive no further disbursements under the Plan.)

Furthermore, after a review of the allegations of the present adversary proceeding, the Plaintiff makes no substantive challenge to Citi's claim. The Plaintiff's exclusive allegation is that the First Case disallowance of the proof of claim was on the merits and requests the court an "automatic" application of section 506(d). Plaintiff is not challenging the perfection of the lien. Plaintiff is

---

[3] Direct payments to a secured creditor are payments provided for in the chapter 13 plan under section 1322(b), and not payments under the chapter 13 plan pursuant to section 1328(a), which are the payments made by the debtor to the chapter 13 trustee.

requesting a plain text interpretation of 11 U.S.C. 506(d) and pleading the court to determine that the disallowance of the claim in the First Case constitutes a substantive evaluation of the claim, and sufficient to interpret that the lien is voided due to, exclusively, the fact of the claim's disallowance. "Section 506(d) empowers the bankruptcy court to void liens supporting disallowed claims only if it concludes those liens to be invalid in substance." Shoemake, 586 at 744. However, the record is void of any action that may suggest a substantive challenge, and, therefore, the lien recorded on the Puerto Rico Property Registry, Manatí Section, at its 4th recordation, with an encumbrance in favor of CMFC, Inc. was not voided and remains in full effect.

In fact, Citi has provided evidence of a perfected lien. On the Certification of the Puerto Rico Property Registry, Manatí Section, at its 4th recordation, there is an encumbrance in favor of CMFC, Inc., consistent with the title study filed by Citi as an attachment to its proof of claim 01-1. (Adv. Proc., Docket No. 18-1, p. 32). In our jurisdiction, the validity of a mortgage depends on its registration in the Puerto Rico Property Registry. "The Property Registry is the governmental organism that records the legal transactions related to real property and any rights over them." Soto Solá v. Registradora de la Propiedad de San Juan, 189 D.P.R. 653, 661 (2013). The mortgage, as a guarantee right, needs to be constituted by registration to ensure the validity of the principal obligation. Soto Solá 189 D.P.R. at 662.

The translated Certification provided by Citi states that in the Puerto Rico Property Registry, Manatí Section, at its 4th recordation, there is an encumbrance in favor of CFMC, Inc. Citi has demonstrated to be in possession of the Note in favor of CMFC, Inc. Citi contends that it has the right to collect on the Note, asserting that "the Debtor admitted that CMI [Citi] is the holder of the note…" and "that a State Court judge pre-petition determined that CMI [Citi] is the holder of the note…." (Docket No. 19, p. 3, ¶6).

The Note presented by Citi is a negotiable instrument regulated in our jurisdiction by Law No. 208-1995, as amended, known as the Law of Commercial Transactions. 19 L.P.R.A. §§ 401 et seq. A negotiable instrument is defined as "a document that has the quality of being transferable

-16-

in exchange for a price or consideration." <u>Cruz Consulting v. El Legado et al.</u>, 191 D.P.R. 499, 509 (2014) (citing M.R. Garay Auban, Derecho Cambiario, Ponce, Ed. Revista de Derecho Puertorriqueño, 1999 p. 1) "It is a credit document that incorporates the right to collect, with the special convenience of transferability and other particular characteristics provided by law." <u>Cruz Consulting</u> 191 D.P.R. at 510 (citing L.M. Negrón Portillo, Derecho Cambiario de Puerto Rico (Instrumentos Negociables), 2da Ed., San Juan, 1995, p. 7).

The Law of Commercial Transactions defines negotiable instrument as an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it complies with the following requirements: (1) "[i]s payable to bearer or to order at the time it is issued or first comes into possession of a holder; (2) is payable on demand or at a definite time, and (3) does not state other undertaking or instruction by the person promising or ordering payment to [perform] any act in addition to the payment of money" 19 L.P.R.A. § 504(a). A negotiable instrument is "issued" when it is first delivered by the maker or drawer, whether to a holder or nonholder, for the purpose of giving rights on the instrument to any person. 19 L.P.R.A. § 505(a).

A promise or order is payable to bearer if it: (1) "[s]tates that it is payable to bearer or to the order of bearer or otherwise indicates that the person in possession of the promise or order is entitled to payment; (2) does not state a payee, or (3) states that it is payable to or to the order of cash or otherwise indicates that it is not payable to an identified person" 19 L.P.R.A. § 509(a). A promise or order that is not payable to bearer is payable to order if it is payable: (1) to the order of an identified person, or (2) to an identified person or order. 19 L.P.R.A. § 509(b).

On the present case, Citi provided evidence of a Note issued on Arecibo, Puerto Rico, on October 18, 2006, which states:

> *FOR VALUE RECEIVED, the undersigned ("Borrower") promise(s) to pay CMFC, INC. or order the principal sum of THIRTY THOUSAND ($30,000.00) Dollars, with interest on the unpaid principal balance from the date of this Note, until paid, at the rate of 8% per annum.*

The Note is guaranteed by a Mortgage recorded in the Puerto Rico Property Registry, Manatí Section, property number 8,327, 4th recordation. The instrument presented by Citi is payable to "CMFC, Inc. or order" and, as described by § 509(b) of the Law of Commercial Transactions, payable to an identified person.[4]

In view of the foregoing, the court concludes that Citi's lien passes through the First bankruptcy case unaffected as its validity was never challenged. Consequently, the plain text analysis of section 506(d) suggested by the debtor/plaintiff is not appropriate.

Conclusion

For the reasons stated above, the court denies Plaintiff's Motion for Summary Judgment (Docket No. 28) and grants Defendant's Motion for Summary Judgment (Docket No. 25). Consequently, the court orders that the instant adversary proceeding be and is hereby dismissed.

Judgment will be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 2nd day of October 2018.

_Enrique S. Lamoutte_
United States Bankruptcy Judge

---

[4] Any allegation, if appropriate, regarding the transferability of the note under the Puerto Rico Law of Commercial Transactions, 19 L.P.R.A. § 551 must be presented before the state court.

-18-